JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Gail S. McCauley, appeals from a common pleas court order granting summary judgment in favor of defendants-appellees, PDS Dental Laboratories, Inc. ("PDS"), Ronald N. Germano, and Michael Lerch, on her claims for wrongful discharge, intentional infliction of emotional distress, respondeat superior, and civil conspiracy. Upon de novo review of the evidence and arguments submitted by the parties in connection with the motion for summary judgment filed by appellees PDS and Germano, we find that no genuine issues as to any material fact existed and the appellees were entitled to judgment as a matter of law. Accordingly, we affirm.
 Procedural History {¶ 2} Appellant filed her complaint against PDS, Germano, Lerch, and Sharon Taylor on December 16, 2005. Appellant did not obtain service on Taylor within one year, so the action against Taylor was never commenced. Civ. R. 3(A); compare Mosley v. 131 Foods, Inc., Cuyahoga App. No. 87696, 2006-Ohio-5719, ¶ 4-5 with Blanton v. Alley, Pike App. No. 02CA685, 2003-Ohio-2594, ¶ 28-29.
 {¶ 3} The complaint alleged that appellant was employed by PDS's predecessor from September 2000 as a dental technician. She began working in the denture department in September 2002. Lerch was her first supervisor in that department. On February 14, 2003, Taylor became appellant's supervisor while Lerch continued to manage the department. *Page 3 
 {¶ 4} In the complaint, appellant claimed that Lerch, an owner of PDS, together with PDS's majority owner, Germano, devised a plan to harass appellant to provoke her to resign to avoid paying her unemployment benefits. She claimed that Taylor was very aggressive and hostile toward her over the three-month period during which appellant worked under her supervision. During that time, appellant claimed she had at least ten meetings with Taylor, Germano, and Lerch, and that she "was often promised that management would talk to Taylor and remedy the situation; however, no steps were taken to cause Taylor to discontinue her aggressive and hostile conduct toward [appellant]." Appellant claimed that Taylor's hostile conduct forced her to resign, effective May 31, 2003.
 {¶ 5} Appellant first claimed that she was constructively discharged in violation of the public policy favoring unemployment compensation for persons who become involuntarily unemployed. Second, she claimed PDS breached its contract with her by subjecting her to harassment, in violation of its employee handbook. Third, she claimed Taylor intentionally inflicted severe emotional distress on her, which Germano and Lerch condoned and directed. Fourth, she claimed that PDS was liable for the actions of Germano, Lerch, and Taylor, who were all acting within the scope of their employment. Finally, she complained that PDS, Germano, and Lerch conspired to harass her to provoke her to resign in order to avoid liability for unemployment compensation benefits. Appellant sought both compensatory and punitive damages. *Page 4 
 {¶ 6} PDS, Germano, and Lerch each answered separately. Lerch cross-claimed for indemnity from both Germano and PDS and filed a third party complaint against another part-owner of PDS, Brad Poorman, for indemnity and/or contribution.
 {¶ 7} PDS and Germano jointly moved for summary judgment on April 6, 2007, arguing that the facts as stated by appellant in her deposition did not support her claims. Attached to the motion was a copy of the company's employee handbook. Appellant's response to this motion included, as evidence, PDS's answers to interrogatories and responses to appellant's requests for admissions, the deposition testimony of Brad Poorman, and appellant's answers to Lerch's interrogatories and documents requests. In her responsive brief, appellant voluntarily dismissed her breach of contract claim.
 {¶ 8} On May 30, 2007, the common pleas court granted summary judgment "with respect to all remaining claims against all defendants," specifically addressing each of appellant's claims other than the breach of contract claim. The court concluded that appellant could not show that she was constructively discharged, so defendants were entitled to judgment as a matter of law on her claim for wrongful termination in violation of public policy. Furthermore, the court concluded that appellant could not demonstrate that Taylor's conduct was extreme and outrageous, so appellant's claim for intentional infliction of emotional distress also failed. The court determined that the claim for respondeat superior liability was based on the claims of wrongful termination and intentional infliction of emotional distress, and *Page 5 
because those claims failed, the claim of respondeat superior liability also failed. Finally, the court granted defendants summary judgment on appellant's civil conspiracy claim because there was no evidence that Germano or Lerch asked Taylor to treat appellant poorly to force appellant to quit.
 {¶ 9} Appellant's deposition transcript[1] reveals that she began employment with PDS in September 2000 as a dental technician in the porcelain department. She took a medical leave from the beginning of June 2002 until the beginning of September 2002 in order to have back surgery. When she returned to work, she began a new position in the denture department, at the same rate of pay she had received before. While she was out on leave, Germano had informed her that if she could not return by a certain date, the company could not hold her job in the porcelain department for her, but they would give her another position.
 {¶ 10} From September 2002 to February 2003, appellant worked side-by-side with Lerch, who was then the supervisor of the denture department. She was trained to perform certain functions and observed Lerch performing others.
 {¶ 11} In February 2003, the company moved from the "old lab" to the "new lab." As part of this transition, appellant was placed at her own work station (although another employee worked across from her during part of the day). One *Page 6 
of appellant's co-workers, Sharon Taylor, became her supervisor. Lerch continued to work in the department, but he was located somewhere else.
 {¶ 12} Appellant testified that on the day of the move, Lerch had told her where she was going to be working and helped her to unpack. Taylor came in and yelled at appellant, telling her that she was not going to be sitting there. When appellant protested that Lerch had told her to sit there, Taylor informed her that "I'm your boss now; I'm your supervisor now. I'm going to tell you where you're going to sit and you're not going to sit there." Lerch confirmed to appellant that Taylor was now her supervisor.
 {¶ 13} Appellant testified that Taylor yelled at her almost every day about her work. She said there were many parts of the job that she had not done before by herself, but when she asked Taylor for help, Taylor told her "it's your work; just do it yourself." Taylor also told her, "if you can't do the work given to you, just quit." Taylor yelled at appellant about having another employee scrape wax off the floor in appellant's work area, complaining that "you should be working on a case." Most of the yelling occurred early in the morning, before other employees arrived, but there were occasions when other employees were present.
 {¶ 14} In her deposition, appellant testified that Taylor was very hostile toward her and acted irritated and aggressive, although she was not physically threatening. Appellant said Taylor always seemed pleasant toward other employees. Appellant claimed that Taylor would pleasantly ask other employees to complete a rush case, *Page 7 
but would leave rush work at appellant's station without comment then complain that appellant was not working on it. Other employees were also allowed to talk to one another and to use their cellular telephones, but appellant was not. When they moved to the new lab, Taylor told appellant that a "higher power" (whom appellant believed to be Germano) had instructed that appellant should not be seated near Lance Ho (another employee) because they talked. Appellant said she had never been reprimanded for excessive talking in the old lab.
 {¶ 15} On April 1, 2003, Lerch told appellant that she was not meeting her production expectations; in her deposition, appellant admitted that she was not. She told Lerch she would keep a list of every job she performed to determine where her skills were lacking. She also offered to come in on a Saturday for additional training, but Taylor would only offer her additional training without pay.
 {¶ 16} Some time later, Taylor left appellant a note stating that there was a job that appellant should have completed the day before; "you had plenty of time." When appellant told Taylor she had done 15 jobs the previous day, Taylor said "I highly doubt it." Appellant tried to show her and Germano the list of the jobs she had done, but they refused to look at it because it did not contain the "pan numbers" allowing them to locate the jobs she claimed to have done.
 {¶ 17} Appellant testified that she had met with Germano, Lerch, other owners of PDS, and Taylor on at least ten occasions during the three and one-half months she worked under Taylor's supervision. During these meetings, she complained *Page 8 
about Taylor yelling at her and about Taylor's refusal to help her. During May, she also complained that Taylor publicly posted the days appellant took off work to care for her daughter, who was very ill.
 {¶ 18} Appellant had not had any prior disagreements with Taylor. Appellant believed "she [Taylor] wanted me to fail. She wanted me to quit. I mean, I don't know why she would do that when I had no problem prior to the move."
 {¶ 19} Appellant testified that she lost weight and suffered depression during the months that she worked under Taylor's supervision.
 Law and Analysis {¶ 20} We review the trial court's order granting summary judgment de novo, employing the same standard of review the trial court used.Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Summary judgment is appropriate if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and, viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. Civ. R. 56(C).
Claims Against PDS and Ronald Germano
 {¶ 21} The claims remaining against PDS and Germano after the parties finished briefing the summary judgment motion were appellant's claims for wrongful discharge in violation of public policy, intentional infliction of emotional distress, *Page 9 
respondeat superior liability, and civil conspiracy. We review de novo the trial court's judgment on each of these claims.
 {¶ 22} Wrongful Discharge. To establish a claim for wrongful discharge in violation of public policy, appellant had to prove:
 "1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
 "2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 "3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 "4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)."
Collins v. Rizkana, 73 Ohio St.3d 65, 69-70, 1995-Ohio-135.
 {¶ 23} We do not quibble with appellant's assertion that there is a clear public policy favoring payment of unemployment compensation to persons discharged from their employment without cause. However, appellant's "constructive discharge" did not jeopardize this policy. During her deposition, appellant stated that she received unemployment benefits. Thus, the alleged public policy was not violated in this case.
 {¶ 24} Furthermore, employees who leave their employment for "just cause" generally are entitled to unemployment compensation under R.C. 4141.29(D)(2)(a). The legal standard of proof that an employee resigned for "just cause" is different *Page 10 
from that for constructive discharge, but if the employee was constructively discharged (which we assume, without deciding here), he or she certainly resigned for "just cause." Cf. Scarnati v. Ohio Dept ofMental Health (August 11, 1994), Franklin App. No. 94API01-102 ("an employee may have `just cause' in discontinuing employment where there is conduct on the part of the employer which justifies the employee's actions, but that employer conduct does not necessarily need to be wrongful. However, the constructive discharge context necessarily involves wrongful conduct on the part of the employer which forces the employee into an untenable position").
 {¶ 25} An employer's constructive discharge of an employee does not jeopardize the public policy favoring unemployment compensation, nor was the public policy subverted in this case. For this reason, we find that PDS and Germano were entitled to judgment as a matter of law on appellant's constructive discharge claim.
 {¶ 26} Intentional Infliction of Emotional Distress/RespondeatSuperior. "In order to recover on an action for intentional infliction of serious emotional stress four elements must be proved: 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go `beyond all possible bounds of decency' and was such that it can be considered as `utterly intolerable in a civilized community,' Restatement of *Page 11 
Torts 2d (1965) 73, Section 46, comment d; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that `no reasonable man could be expected to endure it,' Restatement of Torts 2d 77, Section 46, comment j. It is not necessary that bodily injury or any physical impact be shown." Pyle v. Pyle (1983), 11 Ohio App.3d 31, 34; see, also, Brewer v. Cleveland Bd. of Edn. (1997), 122 Ohio App.3d 378,386.
 {¶ 27} Taylor is the only actor whom appellant claims to have caused her emotional distress. This action was never commenced against Taylor because she was never served. PDS is the only party whom appellant can claim to be liable for Taylor's actions through the doctrine of respondeat superior.
 {¶ 28} We agree with PDS that, as a matter of law, Taylor's actions in yelling at plaintiff and treating her differently than other employees were not "extreme and outrageous." Appellant testified that all of Taylor's "yelling" related to appellant's work. Taylor's stated reason for prohibiting appellant from talking on the telephone or to other employees was that it would take away from her production. Appellant conceded that she was not meeting production expectations. While Taylor's methods might not have been the most effective employee management techniques, her legitimate criticisms of an employee's performance and her efforts to bring appellant's performance up to expectations, even if harsh or unfair, did not exceed the bounds of decency and were not extreme and outrageous. Webb v. Ohio Cas. *Page 12 Ins. Co. (Apr. 16, 1990), Butler App. No. 89-07-109. Therefore, PDS is not liable for intentional infliction of emotional distress under the doctrine of respondeat superior.
 {¶ 29} Civil Conspiracy. Appellant finally asserts a civil conspiracy claim against PDS and Germano. The tort of civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." Kenty v. Transamerica Premium Ins. Co. (1995),72 Ohio St.3d 415, 419, quoting LeFort v. Century 21-Maitland Realty Co. (1987),32 Ohio St.3d 121, 126. "[A]n underlying unlawful act is required before a civil conspiracy claim can be successful." Gosden v. Louis (1996),116 Ohio App.3d 195, 219. In this case, we have already found that appellees were entitled to judgment as a matter of law on appellant's wrongful discharge claim. Appellant failed to show that PDS or Germano engaged in any unlawful act. Therefore, this claim necessarily fails. See, e.g.,Burns v. Rice, 157 Ohio App.3d 620, 2004-Ohio 3228, ¶ 53.
Claims Against Appellee Michael Lerch
 {¶ 30} The common pleas court granted summary judgment "with respect to all remaining claims against all defendants," including appellee Lerch. Lerch did not move for summary judgment, nor did appellant move for summary judgment against him. As a general matter, a party who has not moved for summary judgment is not entitled to summary judgment.Marshall v. Aaron (1984), 15 Ohio St.3d 48, syllabus. The supreme court has allowed an exception to this rule where judgment is granted *Page 13 against the moving party; the court found that, under those circumstances, the due process rights of the movant are not prejudiced.State ex rel. Cuyahoga Cty. Hosp. v. Bur. of Workers' Comp. (1986),27 Ohio St.3d 25, 28. In this case, however, neither appellant nor Lerch moved for summary judgment.
 {¶ 31} In State ex rel. Newell v. Cuyahoga Cty. Court of CommonPleas, 77 Ohio St.3d 269, 1997-Ohio-76, the supreme court expanded this principle to allow summary judgment to be entered in favor of nonmoving parties where the nonmoving parties were entitled to judgment on the same grounds as another party who had moved for summary judgment and as to whom the issues had been fully briefed. In this case, the grounds upon which we affirmed the judgment in favor of PDS and Germano apply equally to Lerch. Therefore, we find the trial court did not err by granting summary judgment to Lerch.
Judgment affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] PDS and Germano gave notice that they were filing this deposition transcript on April 6, 2007, but it appears the transcript was inadvertently filed and docketed in appellant's previously-dismissed action against PDS. At our direction, the clerk of the common pleas court corrected the dockets in the two cases and included the transcript in the record in this case. See App. R. 9(E). *Page 1