[Cite as *Bentkowski v. Trafis*, 2015-Ohio-5139.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102540**

**DAVID A. BENTKOWSKI**

PLAINTIFF-APPELLANT

vs.

**MATTHEW TRAFIS, ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-803270

**BEFORE:** Kilbane, J., Celebrezze, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:** December 10, 2015

**ATTORNEY FOR APPELLANT**

Brent L. English
Law Offices of Brent L. English
The 820 Building - 9th Floor
820 Superior Avenue West
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEES**

**For Tim Fraundorf and Concerned Residents
       Of Seven Hills**

Phillip J. Henry
Phillips & Mille Co., L.P.A.
7530 Lucerne Dr., Suite 200
Middleburg Heights, Ohio 44130

**For the Matthew Trafis and the City of Seven Hills**

Steven A. Friedman
Squire Patton Boggs (US) L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114-1304

**For the City of Seven Hills and Richard Dell'Aquila, Richard Pignatiello, and Patrick DiChiro**

Michelle J. Sheehan
Jonathan H. Krol
Reminger Co., L.P.A.
101 West Prospect Avenue, Suite 1400
Cleveland, Ohio 44115

William Wunderle, pro se
4360 Gene Drive
Seven Hills, Ohio 44131

Gene Dodaro, pro se
6244 Fieldstone Trail
Seven Hills, Ohio 44131

Terrence J. Krafcik, pro se
5521 Avenida Vaquero

Las Vegas, Nevada 89108

Jim Worgull, pro se
4350 Gene Drive
Seven Hills, Ohio 44131

Edward McKenna, pro se
1908 Ridgeview Drive
Seven Hills, Ohio      44131

MARY EILEEN KILBANE, J.:

**{¶1}** Plaintiff-appellant, David Bentkowski ("Bentkowski"), appeals from the trial court's decisions granting summary judgment in favor of defendants-appellees, Patrick DiChiro, Richard Dell'Aquila, Richard Pignatiello, and the city of Seven Hills (collectively "City defendants"), and dismissing defendants Matthew Trafis, Tim Fraundorf, Gene Dodaro, Terrence Krafcik, Jim Worgull, Edward McKenna, William Wunderle, and Concerned Residents of Seven Hills, Inc., from the case. For the reasons set forth below, we affirm both orders.

**{¶2}** This appeal arises from an action brought by Bentkowski after a closed police investigation into "harassing blogs" about him was produced to Seven Hills' councilman Matthew Trafis ("Trafis") pursuant to a public records request. Bentkowski was elected mayor of the city of Seven Hills ("City") in November 2003. He served as the mayor until October 2011, when he resigned. In November 2011, Richard Dell'Aquila ("Dell'Aquila") was elected as the mayor of Seven Hills and Bentkowski was elected as councilman-at-large to Seven Hills City Council. Bentkowski retained that position until December 2013.

**{¶3}** While mayor of the City, Bentkowski approached the City's Law Director, Richard Pignatiello ("Pignatiello"), in the fall of 2009 about certain anonymous postings and blogs criticizing him on Cleveland.com (a website affiliated with *The Plain Dealer*) and other similar community forum websites. Bentkowski inquired if the City could take legal action to protect him and other City employees "from the attacks, abuse and defamation[.]" He further inquired if these postings possibly constituted menacing by stalking, intimidation of a public official, obstruction of justice, or violations of Ohio ethics and election law. Bentkowski suspected some of his political rivals, including Trafis and Concerned Residents of Seven Hills, Inc. ("Concerned Citizens") were involved with the postings. Pignatiello advised that

Bentkowski could file a criminal complaint with the City's police department, which Bentkowski did on October 19, 2009.

{¶4} Seven Hills Police Detective Mike Salloum ("Detective Salloum") was assigned to the investigation of Bentkowski's complaint. Bentkowski provided Detective Salloum with the internet postings he alleged constituted a criminal offense, as well as a narrative describing the alleged criminal conduct. At the end of his narrative, Bentkowski acknowledged that the police report "will remain private until [the] investigation is completed." Detective Salloum reviewed the materials provided by Bentkowski and monitored additional postings on Cleveland.com. In a report, he concluded that "[t]here is no evidence of any crime being violated by any poster." Detective Salloum forwarded his report and investigation materials to the City's prosecutor, Patrick DiChiro ("DiChiro"), for a determination on whether a crime was committed.

{¶5} Upon reviewing Bentkowski's criminal complaint and the information provided by Detective Salloum, DiChiro researched the elements of potential crimes and concluded that no crime had been committed. DiChiro determined to close the investigation in early 2012, after consulting with a cyber-law expert. The expert advised DiChiro that he did not believe a crime had occurred, but if the City wanted to retain him, he would research the issue further. DiChiro decided to ask city council if it desired to retain the legal expert to further research the issue. Prior to the discussion with city council, DiChiro informed Trafis, who was a city councilman at the time, that a police investigation was ongoing regarding internet postings about Bentkowski.

{¶6} The members of city council, including Trafis, met in an executive session and determined they did not wish to expend funds to retain an outside attorney. As a result, in March 2012, DiChiro issued a formal determination that no crime had been committed and

officially closed the investigation. Detective Salloum then informed Bentkowski of this decision.

{¶7} In April 2012, Trafis made a formal public records request for the police investigation. Before producing the file, DiChiro reviewed Ohio law and contacted the Ohio Attorney General's Office for guidance in determining whether the police investigation should be released pursuant to the Public Records Act that might exempt the police investigation from release. Based on his legal research, DiChiro determined that the police investigation was a public record, and he authorized its release in response to Trafis's request. DiChiro did not consult Dell'Aquila or Pignatiello in this regard. Before producing the closed police investigation to Trafis, DiChiro redacted birth dates, social security numbers, and Bentkowski's email address. After the police investigation was released, Cleveland.com and *Scene Magazine* published news articles criticizing Bentkowski for wasting the City's resources on the police investigation.

{¶8} Bentkowski then filed a complaint, containing five causes of action, against DiChiro, Dell'Aquila, Pignatiello, the City, Trafis, Tim Fraundorf ("Fraundorf"), Gene Dodaro ("Dodaro"), Terrence Krafcik ("Krafcik"), Jim Worgull ("Worgull"), Edward McKenna ("McKenna"), Bill Wunderle ("Wunderle"), and Concerned Residents. Bentkowski sought monetary relief for the damage to his reputation resulting from the disclosure of the police investigation.

{¶9} In Count One, he alleges the City, Dell'Aquila, Pignatiello, and DiChiro wrongfully and intentionally disclosed or participated in the disclosure of the personal and confidential information contained in the police investigatory file. Bentkowski claims the police investigatory report was exempt from public disclosure under the Ohio Public Records Act as a

Confidential Law Enforcement Investigatory Record ("CLEIR") under R.C. 149.43 and R.C. Chapter 1347. In Counts Two and Three, Bentkowski alleges that Pignatiello, Dell'Aquila, and the City unlawfully retaliated against him because he disclosed Pignatiello's and Dell'Aquila's ethics violations. In Count Four, he alleges that a group of Seven Hills' residents, including city councilman Trafis, Fraundorf, Dodaro, Krafcik, Worgull, McKenna, Wunderle, and Concerned Residents, which publishes the *Seven Hills Reporter* and operates a website and a Facebook page, had joined in an unlawful civil conspiracy against him. In Count Five, he alleges that all the defendants have intentionally inflicted serious emotional distress upon him.

{¶10} In response, the City defendants and Trafis filed separate motions to dismiss. Bentkowski opposed both motions and amended his complaint. The City defendants and Trafis separately moved to dismiss the complaint again. Several of the individual defendants, including Worgull, Wunderle, and Dodaro, also filed motions to dismiss. Bentkowski opposed these motions as well.

{¶11} The trial court denied the City defendants' motion to dismiss in part and granted it in part. The court found that Bentkowski alleged sufficient facts to survive a Civ.R. 12(B)(6) motion as to Counts One, Two, Three, and Five. The court dismissed Count Four against the City defendants, finding that Bentkowski's amended complaint did not set forth a claim for civil conspiracy against Dell'Aquila, Pignatiello, DiChiro or the City. The court stated "[a] thorough reading of [Bentkowski's] claims show that each claim was explicitly directed to specific defendants and the conspiracy claim did not name the movants."

{¶12} The court granted Trafis's renewed motion to dismiss, stating that Count Five (intentional infliction of emotional distress ("IIED")) fails "insofar as it claims distress for actions regarding public dissemination of critical comments about [Bentkowski], for example,

comments posted on the local newspaper's online community forum." The court stated that because Bentkowski was a public official at the time of the alleged wrongdoing, "the requirements for his claim of emotional distress are heightened." The court further stated:

> In order for a public official to make an emotional distress claim caused by public opinion statements, the plaintiff must show that the complained of statements are actual misstatements of fact and were made with actual malice. *Stepien v. Franklin*, 39 Ohio App.3d 47 (Ohio Ct. App., Cuyahoga County 1988). Plaintiff does not claim that the statements allegedly made by the defendants were false and therefore his claim of intentional infliction of emotional distress against defendant Trafis is dismissed. As defendant Trafis is not alleged to have committed another tort, plaintiff's claim of conspiracy also fails.

{¶13} The court applied the arguments made by Trafis as to Counts Four and Five of Bentkowski's complaint to the remaining defendants. The court noted that Bentkowski was awarded "ample opportunity to respond to Trafis's argument and the court's decision regarding these claims goes to the legal, not the factual, basis of the complaint."

{¶14} The trial court then granted Worgull and Wunderle's motion to dismiss, as well as Dodaro's motion to dismiss, applying the same rationale. The court also applied its decision to Fraundorf, Krafcik, McKenna, and Concerned Residents, and dismissed these defendants from the case. Therefore, only the following defendants remained in the case: Dell'Aquila, Pignatiello, DiChiro, and the City on Counts One, Two, Three, and Five.

{¶15} Thereafter, the City defendants filed a joint answer, and following discovery they filed two motions for summary judgment — one on Counts Two and Three, and the other on Counts One and Five. Bentkowski filed separate briefs in opposition to both motions. On December 31, 2014, the trial court granted the City defendants' motions for summary judgment. In a thorough 11-page opinion, the trial court found that the City defendants are entitled to governmental immunity and Bentkowski's claims fail as a matter of law. The court stated:

Bentkowski alleges that the release of the police record was exempted by R.C. 149.43(h), which prevents the release of "confidential law enforcement investigatory records." *See* R.C. 149.43(h). [Bentkowski] also argues that the release of the police record was a violation of R.C. 102.99(B)[.]

* * *

[However,] Bentkowski fails to identify a specific section of the Ohio Revised Code which expressly imposes liability upon the [City] Defendants for the release of the records in response to a public record request. Additionally, Bentkowski fails to identify the confidential information released which would invoke a violation of R.C. 102.03(B) to exempt the [City] defendants from the general blanket of governmental immunity. No genuine issue of material fact remains to defeat summary judgment on this issue.

The trial court further found that:

The grant of immunity also applies to the individual defendants named in this case.

* * *

Bentkowski has failed to provide evidence of malice, bad faith, or wanton or reckless conduct to divest the individual defendants of governmental immunity and impose individual liability. The record indicates DiChiro determined that the file was subject to release and that this decision was not influenced by Pignatiello or Dell'Aquila. * * * At deposition, Bentkowski stated that he was not informed by anyone that Pignatiello or Dell'Aquila were involved in a conspiracy to release the police report, but instead that he made this conclusion based upon the timetable of the report being released contemporaneously with Bentkowski's accusations of improper activity by city officials.

* * *

No question of material fact remains to defeat summary judgment on this issue.

{¶16} Bentkowski now appeals, raising the following six assignments of error for review, which shall be discussed together where appropriate.

Assignment of Error One

The trial court erred in granting summary judgment on statutory immunity grounds.

Assignment of Error Two

The trial court erred in granting summary judgment where a genuine issue of material fact existed and the City defendants were not entitled to judgment as a matter of law regarding their wrongful disclosure of private information about [Bentkowski].

Assignment of Error Three

The trial court erred in granting summary judgment to the City defendants on [Bentkowski's] claim for intentional infliction of serious emotional distress.

Assignment of Error Four

The trial court erred in dismissing Count Four of the amended complaint alleging that Pignatiello and Dell'Aquila were part of an unlawful civil conspiracy.

Assignment of Error Five

The trial court erred in granting Defendant Trafis's motion to dismiss all claims against him.

Assignment of Error Six

The trial court erred in entering judgment for the remainder of the individual defendants, some of whom did not even move for dismissal.

Motion for Summary Judgment

{¶17} In the first and second assignments of error, Bentkowski argues the court erred in granting summary judgment because there are genuine issues of material fact with regard to whether the CLEIR exception applies to the closed police investigation and whether the City defendants acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Standard of Review

{¶18} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows.

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.

{¶19} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

Governmental Immunity

{¶20} Determining whether a political subdivision is immune from liability under R.C. 2744.02 involves a three-tiered analysis. *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10; *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556, 2000-Ohio-486, 733 N.E.2d 1141. A general grant of immunity is provided within the

first tier, which states that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."   R.C. 2744.02(A)(1).

{¶21} The second tier in the immunity analysis focuses on the five exceptions to this immunity, which are listed in R.C. 2744.02(B).   *Elston* at ¶ 11.   If any of the exceptions to immunity are applicable, thereby exposing the political subdivision to liability, the third tier of the analysis assesses whether any of the defenses to liability contained in R.C. 2744.03 apply to reinstate immunity.   *Id*. at ¶ 12.[1]

{¶22} It is undisputed that the City is a political subdivision and is entitled to immunity under the first prong of the inquiry.   Therefore, the City's immunity can only be removed if one of the enumerated exceptions contained in R.C. 2744.02(B) apply.   *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781 at 118.   Similarly, immunity of city officials can only be removed if one of the exceptions in R.C. 2744.03(A)(6) apply.

{¶23} Bentkowski contends that the following three exceptions apply to hold the City defendants liable for the disclosure of the closed police investigation:   (1) the Revised Code imposes liability and an exception exists per R.C. 2744.02(B)(5) and 2744.03(A)(6)(c); (2) government officials lose their immunity for malicious, bad faith conduct under R.C. 2744.03(A)(6)(b); and (3) immunity is unavailable under R.C. 2744.09(B) for claims brought by an employee against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision.   We agree with the

---

[1] R.C. 2744.03(A) provides similar analysis for employees of political subdivisions.

trial court in that, as a matter of law, none of these exceptions apply.[2]  Therefore, the City

defendants are entitled to governmental immunity from Bentkowski's claims.

**{¶24}** Bentkowski first argues that the closed police investigation is exempt from public

records disclosure under the CLEIR exception set forth in R.C. 149.43(A)(1)(h) and a trial

preparation record pursuant to R.C. 149.43(A)(4).[3]  R.C. 149.43(A)(1)(h) provides that a CLEIR

does not constitute a public record.  R.C. 149.43(A)(2) defines a CLEIR as

> any record that pertains to a law enforcement matter of a criminal, quasi-criminal,
> civil, or administrative nature, but only to the extent that the release of the record
> would create a high probability of disclosure of any of the following:
>
> (a) The identity of a suspect who has not been charged with the offense to which
> the record pertains, or of an information source or witness to whom confidentiality
> has been reasonably promised;
>
> (b) Information provided by an information source or witness to whom
> confidentiality has been reasonably promised, which information would
> reasonably tend to disclose the source's or witness's identity;
>
> (c) Specific confidential investigatory techniques or procedures or specific
> investigatory work product;
>
> (d) Information that would endanger the life or physical safety of law enforcement
> personnel, a crime victim, a witness, or a confidential information source.

**{¶25}** Bentkowski claims the police investigatory file meets all four criteria.  As a result,

the City defendants are not entitled to immunity because the exceptions found R.C.

2744.02(B)(5) and 2744.03(A)(6)(c) impose "civil liability" for their improper disclosure of the

police investigation.  We find Bentkowski's argument unpersuasive because the police

---

[2]Because there is no exception to the general grant of immunity, there is no need for us to reach the third tier in the analysis.  R.C. 2744.03.

[3]Ohio's Public Record Act is set forth in R.C. Chapter 149.

investigation, which was closed, does not constitute a CLEIR, and the Revised Code imposes criminal liability, not civil liability for the disclosure of an exempt public record.

## The CLEIR Exception is Inapplicable

{¶26} R.C. 149.43(A)(2)(a) and (b) are not applicable to the instant case because the closed police investigation did not include the name of any suspect since no crime was committed. The investigation also does not contain the name of any confidential informant or witness interviewed by the police. Bentkowski cannot be considered a confidential informant because he was the complainant. Furthermore, Bentkowski's identity as the alleged victim of a crime would not remain confidential because any criminal indictment would include his name as the alleged victim. R.C. 149.43(A)(2)(c) is inapplicable because the file included no confidential investigatory techniques. R.C. 149.43(A)(2)(d) is inapplicable because there is no allegation that the disclosure of anything Bentkowski told the police would endanger his physical safety. Moreover, Bentkowski acknowledged his understanding that the police file will remain private until the investigation is completed. Therefore, the closed police investigatory file is a public record subject to disclosure under R.C. 149.43.

## The Trial Preparation Exception is Inapplicable

{¶27} Bentkowski also argues that the closed police investigation is a trial preparation record exempt from disclosure. A trial preparation record is a "record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney." R.C. 149.43(A)(4). Bentkowski claims that the closed police investigation contains his own work product, which includes information he submitted to the police in anticipation of litigation and criminal prosecution. However, by the time the closed police

investigation was produced in response to the public records request, the investigation was closed and no crime was charged or even contemplated. Thus, trial was certainly not reasonably anticipated, and this exception is inapplicable to the facts in the instant case.

Civil Liability is Not Imposed by Statute

{¶28} R.C. 2744.02(B)(5) and 2744.03(A)(6)(c) provide that a political subdivision and its employees are not immune when "civil liability" is expressly imposed upon them by a section of the Revised Code. *Id.* The statutes further provide that "civil liability" shall not be construed to exist under another section of the Revised Code merely because that section provides for a criminal penalty. *Id.*

{¶29} In support of his argument, Bentkowski relies on R.C. 102.03(B), and contends that this section imposes liability on city officials. R.C. 102.03(B) provides that no public official shall

> disclose or use, without appropriate authorization, any information acquired by the public official or employee in the course of the public official's or employee's official duties that is confidential because of statutory provisions, or that has been clearly designated to the public official or employee as confidential when that confidential designation is warranted because of the status of the proceedings or the circumstances under which the information was received and preserving its confidentiality is necessary to the proper conduct of government business.

{¶30} Under R.C. 102.99(B), a violation of R.C. 102.03(B) is a first-degree misdemeanor.

{¶31} We note, however, and Bentkowski concedes, that R.C. 102.03(B) imposes only "criminal penalties." R.C. 102.03 does not expressly impose "civil liability," as required to abrogate immunity under R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c). He further concedes that the Public Records Act does not explicitly and directly impose a duty upon the City

defendants to not disclose records about him that are exempt from disclosure. Therefore, Bentkowski cannot use these as exceptions to the City defendants' general grant of immunity.

### R.C. 2744.03(A)(6)(b) — Pignatiello, DiChiro, and Dell'Aquila Did Not Act with Malicious Purpose, in Bad Faith, or in a Wanton or Reckless Manner

{¶32} Bentkowski next argues that the court erred when it found that Pignatiello, DiChiro, and Dell'Aquila did not act with a malicious purpose, in bad faith, or in a wanton or reckless manner by releasing the closed police investigation.

{¶33} "'In the context of political subdivision immunity, malicious purpose has been defined as the willful and intentional design to do injury.'" *Friga v. E. Cleveland*, 8th Dist. Cuyahoga No. 88262, 2007-Ohio-1716, ¶ 15, quoting *Piro v. Franklin Twp.*, 102 Ohio App.3d 130, 139, 656 N.E.2d 1035 (9th Dist.1995), citing *Jackson v. Butler Cty. Bd. of Cty. Commrs.*, 76 Ohio App.3d 448, 453, 602 N.E.2d 363 (12th Dist.1991). Bad faith "'connotes a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" *Jackson*, quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (1962), paragraph two of the syllabus. Wanton misconduct is the failure to exercise any care whatsoever and establishes a disposition to perversity on the part of the tortfeasor. *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 1994-Ohio-368, 639 N.E.2d 31. Lastly, reckless "conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent." *Piro* at 139, citing *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705 (1990), citing 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965).

{¶34} We agree with the trial court's finding that there is no evidence to suggest that Dell'Aquila or Pignatiello had any involvement in the release of the closed police investigation or that they acted in bad faith by ordering or encouraging its release. DiChiro's deposition testimony demonstrates that he alone decided to release the closed police investigation in response to certain public records requests. Bentkowski admits that he was not informed by anyone that Dell'Aquila or Pignatiello were involved in a conspiracy to release the police investigatory report; instead, he concluded they were involved based upon the report being released contemporaneously with his accusations of improper activity by City officials.

{¶35} With respect to DiChiro, Bentkowski argues DiChiro acted in bad faith when he disclosed information to Trafis prior to a city council meeting and he failed to confide in Bentkowski about the release of the closed police investigation. A review of the record reveals that DiChiro shared with Trafis that a police investigation existed. He did not provide Trafis with the investigation or allow Trafis to review any part of the file. The information DiChiro shared with Trafis was the same information that was to be shared during an upcoming council meeting. Moreover, DiChiro took considerable steps to determine whether the investigatory file was a public record, including conducting research on the matter and consulting with the police and attorney general. These efforts belie any notion that DiChiro acted recklessly, in bad faith, or with malice as Bentkowski contends. Therefore, we do not find that Pignatiello, DiChiro, or Dell'Aquila acted with bad faith or malicious conduct.

R.C. 2744.09(B) — Bentkowski's Claims Do Not Arise Out of the Employment Relationship with the City

{¶36} Under 2744.09(B), the general blanket of political immunity is inapplicable to "[c]ivil actions by an employee * * * against his political subdivision relative to any matter that

arises out of the employment relationship between the employee and the political subdivision[.]" Bentkowski's claims are premised on the release of a closed police investigation file in response to public records request. This scenario is not related to Bentkowski's employment with the City. Bentkowski concedes that the closed police investigation does "not relate to Bentkowski's performance as a public official[.]"

{¶37} Under the plain language of the statute, political immunity does not extend to civil actions by an employee against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision. R.C. 2744.09(B). As a result, Bentkowski cannot rely on the "employment" exception to the general blanket of immunity.

{¶38} Therefore, the first and second assignments of error are overruled.

<u>IIED — City Defendants</u>

{¶39} In the third assignment of error, Bentkowski argues the trial court improperly granted summary judgment to the City defendants on his IIED claim. Bentkowski claims the City defendants inflicted emotional distress upon him by disclosing the closed police investigation.

{¶40} In order to establish an IIED claim, the plaintiff must demonstrate that (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure. *Lombardo v. Mahoney*, 8th Dist. Cuyahoga No. 92608,

2009-Ohio-5826, ¶ 6, citing *Ashcroft v. Mt. Sinai Med. Ctr.*, 68 Ohio App.3d 359, 366, 588 N.E.2d 280 (8th Dist.1990).

{¶41} Liability for IIED will only be found in the most extreme circumstances. *Crable v. Nestle USA, Inc.*, 8th Dist. Cuyahoga No. 86746, 2006-Ohio-2887, ¶ 55. "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.*, quoting *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983).

{¶42} Public figures and public officials are prohibited from recovering damages for IIED without showing that the publication contained a false statement of fact that was made with actual malice. *Stepien v. Franklin*, 39 Ohio App.3d 47, 52, 528 N.E.2d 1324 (8th Dist.1988), citing *Hustler Magazine v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).

{¶43} In the instant case, the disclosure of the closed police investigation in response to the public records request does not constitute extreme or outrageous conduct sufficient to establish a claim for intentional infliction of emotion distress. The Ohio Supreme Court has stated that the liability for IIED:

> "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. *See* Magruder, Mental and Emotional Disturbance in the Law of Torts, Harvard Law Review 1033, 1053 (1936). * * *"

*Yeager* at 375, quoting Restatement of the Law 2d, Torts (1965) 71, Section 46, Comment d. Thus, Bentkowski's IIED claims fail as a matter of law.

{¶44} Accordingly, the third assignment of error is overruled.

Motion to Dismiss

{¶45} In the fourth, fifth, and sixth assignments of error, Bentkowski argues the trial court erred when it dismissed the civil conspiracy claim against Dell'Aquila and Pignatiello, and dismissed Trafis, Fraundorf, Dodaro, Krafcik, Worgull, McKenna, Wunderle, and Concerned Citizens from the case.

{¶46} We apply a de novo standard of review to the trial court's granting of a motion to dismiss under Civ.R. 12(B)(6) for failure to state a claim. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5, citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136. Under this standard of review, we must independently review the record and afford no deference to the trial court's decision. *Herakovic v. Catholic Diocese of Cleveland*, 8th Dist. Cuyahoga No. 85467, 2005-Ohio-5985, ¶ 13.

{¶47} In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle the plaintiff to relief. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 11, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975).

{¶48} In resolving a Civ.R. 12(B)(6) motion, a court's factual review is confined to the four corners of the complaint. *Grady v. Lenders Interactive Servs.*, 8th Dist. Cuyahoga No. 83966, 2004-Ohio-4239, ¶ 6. Within those confines, a court accepts as true all material allegations of the complaint and makes all reasonable inferences in favor of the nonmoving party.

*Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 667, 1995-Ohio-295, 653 N.E.2d 1186. "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991).

Civil Conspiracy — Pignatiello and Dell'Aquila

**{¶49}** Bentkowski argues the court erred when it granted Pignatiello and Dell'Aquila's motion to dismiss on the grounds that his civil conspiracy cause of action did not apply to them. We agree with the end result of trial court, but we reach the same conclusion on different grounds. Bentkowski acknowledges that Pignatiello and Dell'Aquila's names were not expressly referenced in the description for Count Four. They were, however, referenced in the body of the complaint. In our de novo review, we accept as true all material allegations of the complaint and make all reasonable inferences in favor of the nonmoving party.

**{¶50}** In Count Four, Bentkowski alleges that Pignatiello and Dell'Aquila "were willing participants in the conspiracy and worked behind the scenes to ensure that the information was released." To establish a civil conspiracy claim, the plaintiff must prove: "(1) a malicious combination of two or more persons, (2) causing injury to another person or property, and (3) the existence of an unlawful act independent from the conspiracy itself." *Kelley v. Buckley*, 193 Ohio App.3d 11, 2011-Ohio-1362, 950 N.E.2d 997 (8th Dist.), ¶ 70, citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 1998-Ohio-294, 700 N.E.2d 859. "An action for civil conspiracy cannot be maintained unless an underlying unlawful act, which would be actionable in the absence of the conspiracy, is committed." *Id.*, citing *Gosden v. Louis*, 116 Ohio App.3d 195, 687 N.E.2d 481 (9th Dist.1996).

**{¶51}** In the instant case, Bentkowski fails to allege an "unlawful act" independent from the conspiracy itself. Because Bentkowski failed to establish the requisite elements to sustain a cause of action for civil conspiracy, his claim fails as a matter of law. *See McCauley v. PDS Dental Laboratories*, 8th Dist. Cuyahoga No. 90086, 2008-Ohio-2813.

**{¶52}** Therefore, the fourth assignment of error is overruled.

<u>Civil Conspiracy and IIED — Trafis</u>

**{¶53}** Bentkowski next argues that the trial court improperly granted Trafis's motion to dismiss. Bentkowski alleged a civil conspiracy cause of action and an IIED cause of action against Trafis. Bentkowski's civil conspiracy cause of action fails for the same reasons discussed above.

**{¶54}** With regard to Bentkowski's IIED cause of action, a trial court may dismiss a claim for intentional infliction of emotional distress under Civ.R. 12(B)(6), when the alleged conduct does not, as a matter of law reach the level of extreme and outrageous conduct. *Reamsnyder v. Jaskolski,* 10 Ohio St.3d 150, 462 N.E.2d 392 (1984); *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 63, 2009-Ohio-2665, 915 N.E.2d 696 (10th Dist.).

**{¶55}** Bentkowski's IIED claim was based on his allegation that "[t]he Defendants, jointly and severally, intentionally and recklessly inflicted serious emotional distress upon the Plaintiff by their outrageous conduct enumerated above." However, Bentkowski's amended complaint, which was filed after Trafis filed his initial motion to dismiss, did not contain any allegation that any of the statements allegedly made by Trafis were false statements of fact made with actual malice. Because he failed to allege that Trafis, or any defendant, made false statements of fact, with actual malice, Bentkowski's claim is legally deficient, and the trial court properly granted Trafis's renewed motion to dismiss.

**{¶56}** Therefore, the fifth assignment of error is overruled.

### The Other Nonmoving Defendants

**{¶57}** Bentkowski argues the trial court also erred when it dismissed all claims against the remaining nonmoving defendants because he did not receive notice that the trial court intended to dismiss the nonmoving parties.

**{¶58}** In *X-S Merch., Inc. v. Wynne Pro, L.L.C.*, 8th Dist. Cuyahoga No. 97641, 2012-Ohio-2315, we stated that "dismissals under Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted are akin to dismissals pursuant to Civ.R. 41(B)(1) in that they are 'fundamentally unfair' in the absence of prior notice and an opportunity to respond." *Id.* at ¶ 17, citing *Mayrides v. Franklin Cty. Prosecutor's Office*, 71 Ohio App.3d 381, 594 N.E.2d 48 (10th Dist.1991). We also stated that: "[t]he only instances of when a sua sponte dismissal of a complaint without notice is appropriate are when the complaint is frivolous or the plaintiff cannot succeed on the facts stated in the complaint." *X-S Merch.* at ¶ 17, fn. 2, citing *Dunn v. Marthers*, 9th Dist. Lorain No. 05CA008838, 2006-Ohio-4923.

**{¶59}** Here, the docket reflects that Trafis filed a motion to dismiss Bentkowski's complaint, and in response, Bentkowski filed a brief in opposition and a motion for leave to file an amended complaint. Bentkowski's amended complaint contained the same allegations relating to the claims for IIED and civil conspiracy against Trafis and the nonmoving defendants. Trafis then filed a renewed motion to dismiss and Bentkowski filed a brief in opposition. In ruling on Trafis's renewed motion to dismiss, the trial court applied his argument to all the defendants. The court found that Bentkowski was awarded ample opportunity to respond to Trafis's argument that Bentkowski failed to allege that any defendant made any false statement of

fact with actual malice against him. The court further found that its decision regarding these causes of action went to the legal, not factual basis of the complaint.

{¶60} Because the trial court found that the claim was legally deficient based on the facts alleged in Bentkowski's complaint, it was entitled to apply that argument to all defendants named in the IIED cause of action. Moreover, since the nonmoving defendants were not alleged to have committed any underlying tort other than the IIED claim, Bentkowski's civil conspiracy cause was also legally deficient. Therefore, we find that the trial court did not err in dismissing Bentkowski's IIED and civil conspiracy causes of action against the nonmoving defendants.

{¶61} Accordingly, the sixth assignment of error is overruled.

{¶62} Judgment is affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

FRANK D. CELEBREZZE, JR., A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR